**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LARRY G. SNYDER, JR.,** on his behalf and
others similarly situated,

                  **Plaintiff,**

**-vs-**                                                    Case No.  6:05-cv-718-Orl-22DAB

**CLASSIC & MUSCLE CAR**
**SUPERSTORES, INC., and RICHARD**
**HAGAN,**

                  **Defendants.**
_____

## ORDER

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **MOTION TO COMPEL AND FOR SANCTIONS (Doc. No. 27)**
>
> **FILED:**      **December 16, 2005**
>
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED, in part and DENIED, in part**.

> **MOTION:**    **JOINT MOTION TO SEAL DOCUMENT (Doc. No. 28)**
>
> **FILED:**      **December 19, 2005**
>
> _____
>
> **THEREON** it is **ORDERED** that the motion is **DENIED**. In view of the Court's holding that the email is no longer privileged, there are no grounds to seal the motion.

> **MOTION:** MOTION TO EXTEND TIME (Doc. No. 30)
>
> **FILED:** January 4, 2006
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED**.

These motions arise out of the unfortunate creation and production by Defendant of certain email correspondence between the principal of the corporate defendant and defense counsel. Plaintiff contends that the email evinces an attempt to continue to delay production of discovery documents, or to withhold same. For its part, Defendant argues that the email is privileged as attorney-client communication and that Plaintiff's counsel was unprofessional in filing it. Upon review of the papers submitted by the parties, the Court finds that: 1) the email was initially covered under the attorney-client privilege, but 2) the privilege was waived upon its production to a third-party prior to being sent to Plaintiff's counsel; and 3) while the email does not provide a sufficient basis to conclude that discovery is being withheld, thus justifying an order to compel; 4) it does support an inference that Defendants and their counsel are seeking to delay the orderly flow of discovery and supports a finding that defense counsel has acted inappropriately and unprofessionally, warranting sanctions.

**The email**

By way of background, the papers indicate that Plaintiff served a Request for Production of Documents, and Defendant responded, offering to produce the documents at its place of business. Apparently, as counsel resides in South Florida and the corporation is in Brevard county, Plaintiff's counsel sought to have the documents copied and sent to him. This did not happen promptly, and Plaintiff's counsel threatened to bring a motion to compel. This prompted the following communication from defense counsel to (apparently) Defendant Hagen:

> Don't worry! I will stall him. This is a standard threat. All attorneys make it. However, we should give him a date that documents will be in my office to prevent a motion to compel and provide a paper trail that we attempted to comply. I will tell him the documents will be in my office next Wednesday. Will that be enough time?
> * * *
> Make sure your assistant keeps track of the number of copies. We are going to charge this moron $.10 per page.

Four days later, defense counsel again wrote to Mr. Hagen:

> Rick: Have CMC send the documents directly to Celler's office, and just send me a copy of the documents later. Cellar's address is: [address omitted]. Make sure they get there by Friday.
>
> Also, just to confirm, Celler provided me with copies of the enclosed pay records at the preliminary mediation. He claims that these are considered 'paystubs' whatever the hell that means, and that CMC should have copies of all these. If CMC does have copies, we will need to provide them under the rules. If CMC does not keep copies of these particular records, I will just tell him to [expletive deleted] off.
>
> John

**The attorney-client privilege**

The attorney-client privilege established by Florida Statutes, Section 90.502 (and recognized in F.R.E. 501), protects certain communications intended to be confidential between a client and his counsel. The privilege also extends to corporate entities. Fla. Stat. § 90.502(1)(b). Thus, if the communication was made within the context of the representation and was intended to be confidential, it is normally privileged. A cursory glance at the email is sufficient to establish that it falls within that definition.[1] It contains advice and litigation strategy (albeit misguided) relating to a pending case. Had the document been withheld and placed on a privilege log, the Court would not hesitate to hold

---

[1] Indeed, it appears that the email contained a standard notice clause, stating that the communication enclosed may be privileged and confidential.

it privileged and immune from production. The privilege, however, is not absolute and is subject to waiver.

**Waiver**

If the privilege is waived, the document is properly disclosed. What constitutes waiver is a fact based inquiry. Some courts note that mere inadvertent disclosure does not amount to waiver, *see Georgetown Manor, Inc. v. Ethan Allen, Inc.,* 753 F. Supp. 936 (S.D. Fla. 1991) (disclosure must be intentional in order to find waiver), but most courts apply a "relevant circumstances test" which evaluates the following factors: 1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the production; 2) the number of inadvertent disclosures; 3) the extent of the disclosure; 4) any delay in measure taken to rectify the disclosure; and 5) whether he overriding interest of justice is served by relieving a party of its error. *See Abamar Housing Dev. Inc. v. Lisa Daly Lady Decor, Inc.,* 698 So. 2d 276, 279 (Fla. 3rd DCA 1997).

Upon an analysis of these factors, any privilege attached to this particular document was waived upon the intentional disclosure of the document to Deborah Kotula, Mr. Hagen's friend and the person who helped copy the documents for transmittal. According to the Affidavit of Mr. Hagen (Doc. No. 32), Ms. Kotula is not an employee of either Defendant, but is an employee of PBS Global, Inc., a non-party to this action. As stated by Ms. Kotula and Mr. Hagen, Defendant and PBS are not parents, subsidiaries, or affiliates of one another, nor is there any other relationship between the corporate Defendant and PBS. (*See* Affidavit of Deborah Kotula, Doc. No. 33). According to the unrebutted testimony of both Hagen and Kotula, on December 15, 2005, Mr. Hagen asked Kotula to help him make copies of the document production, including checks, check ledgers and timesheets. Hagen asked Kotula to send the documents to Mr. Celler. According to Kotula, when she inquired

as to what address she should send the documents to, "[Hagen] printed out an email containing Mr. Celler's address and said, "send them to his address," handing me the email." Doc. No. 33.  Ms. Kotula avers that after she made the copies, she handed the documents to her assistant, Judy Demko, and asked her to send the documents to the address indicated on the email. "By mistake, Ms. Demko enclosed the email along with the documents." *Id.*

In his Affidavit, Hagen avers that after he handed the email to Ms. Kotula, "I also told her not to include the email since it was an attorney-client communication between Mr. Benford and me." (Doc. No. 32).  Ms. Kotula's Affidavit contains no representation that any such conversation took place prior to sending out the documents, but notes that Mr. Hagen advised her of the confidential nature of the email *after* he found out that it was sent to Mr. Celler (Doc. No. 33).

This was not *inadvertent* disclosure at all.  In fact, it is admitted by Hagen that the disclosure to Kotula, a non-party, unrelated in any legally significant way to the corporate Defendant or Hagen, was *intentional.*  Hagen gave Kotula the email in order for her to have Celler's address. While Hagen's motives may have been appropriate (he wanted help in compiling the documents and sending them out), it does not matter why the paper was disclosed, as long as it was disclosed knowingly and voluntarily, as appears to be evident here.  Moreover, Defendants are not saved by Hagen's representation (unsupported by Kotula) that he told Kotula the email was confidential.  Indeed, if Hagen made such a statement, that is further specific evidence that the disclosure was a knowing and voluntary waiver.  He knew the document was privileged, but gave it to a third party anyway.

Defendants seem to be under the mistaken impression that as long as the documents are not willingly disclosed to one's adversary, that they may be shared with friends, associates or other non-

parties[2], without losing their privileged status. Such, of course, is not the case. The very purpose of the privilege is to safeguard the confidential nature of what transpires between an attorney and his or her client. Once the client shares that communication with someone outside of that relationship, the confidential nature of the communication is lost and there exists no grounds for the privilege to continue. Here, the client gave the information willingly, knowingly and voluntarily to Ms. Kotula, thus vitiating the privilege. Ms. Kotula, in turn, gave the document to her assistant, further negating any privilege claim, and the document eventually made its way to Celler. As Mr. Celler was not the initial recipient of the information, but, indeed, was the *third* non-party to receive the information, any privilege that may have attached was long gone by the time he received the documents. The privilege was waived.[3]

**The motion to compel**

Having determined that the document is not privileged and thus, fair game, the Court turns to the issue of whether the email supports a conclusion that documents are being withheld. While the email is obviously scandalous and unprofessional (as will be further explored below), it does not prove that documents exist which are being purposely withheld. The Court cannot compel a party to produce what it does not have. As the email indicates that if documents exist, they are to be (eventually) produced, and a production did, in fact, occur, there do not appear to be grounds for an order to compel.

---

[2] While there are cases that have extended the privilege to employees or other agents of a corporate Defendant, here, there is no relationship whatsoever between the corporate Defendant and Ms. Kotula.

[3] Even under the traditional analysis of the factors set forth above, it is clear that waiver occurred. The record shows that no steps were taken to prevent inadvertent disclosure. Indeed, defense counsel did not even review the documents prior to the production, but rather asks in his email for the client to "send me a copy of the documents later." In view of such careless lawyering, the Court sees no justification for relieving Defendants of their error, if error it was.

**The motion for sanctions**

The email does indicate, however, an intent to be non-cooperative with discovery obligations, as evidenced by the reference to "stalling" and creating a "paper trail" in order to show that Defendants "attempted to comply"with their obligations. The Court also notes the offensive language and distasteful characterization of Plaintiff's counsel.

Surprisingly, defense counsel's response to the motion, which is largely illegible and includes pages of what appear to be pictures of a scanning device, does not apologize for this inappropriate behavior,[4] which violates not only the obligations to proceed in good faith inherent in the Federal Rules of Civil Procedure; the explicit obligation to act with civility and in a spirit of cooperation, found in Local Rule 2.04(h); and quite possibly the regulations regarding professional responsibility applicable to the Florida Bar (including the Oath of Admission). Rather, defense counsel has the temerity to accuse Mr. Celler of "bad faith" and notes that Plaintiff and his counsel "apparently have little regard for the attorney-client privilege, the Local Rules of this Court, and basic notions of professionalism." (Doc. No. 31, at 9). It is **ORDERED** that Mr. Benford is hereby **admonished** for conduct inconsistent with what is expected of members of the bar of this Court and he is cautioned that the Court will not tolerate any future episodes of unprofessional conduct relating to any case before this Court. There is a clear difference between zealous advocacy and malicious bullying. Besmirching a fellow member of the bar is completely unacceptable. Even when the slander is only meant to be communicated to a client, such remarks demean the profession and denigrate the litigation process and the due administration of justice. A client steeped in such characterizations of opposing

---

[4]Indeed, defense counsel claims his comments are mere "understandable expression[s] of frustration to Plaintiff's counsel's unreasonable and uncooperative timelines." (Doc. No. 31 at 10).

counsel and the discovery process would naturally tend to lose respect for the Courts and the judgments flowing from them.

As it appears that Mr. Benford intended to interfere with the timely and orderly flow of discovery, a monetary sanction is appropriate, as well as the admonishment set forth above. Benford is **ordered** to pay *forthwith* **$250.00** to Plaintiff's counsel, as motion costs.

A final note is in order. The Court is deeply troubled by Benford's complete lack of remorse and his failure to acknowledge the obviously inappropriate nature of his conduct. Counsel would do well to remember that he has chosen a profession which is significantly dependent on reputation. Continued "tough guy" posturing may work in the short run, but it is wholly ineffective in developing the kind of respect among peers that only one's good name can provide.

**DONE** and **ORDERED** in Orlando, Florida on January 18, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record